This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas. Appellant Dominic Johnson, appeals his conviction for escape, a violation of R.C. 2921.34(A) and(C)(2)(a), arising from his failure to return to a halfway house where he was placed while on parole.
Appellant was convicted of two counts of aggravated robbery and one count of felonious assault in 1983 and sentenced to prison. Aggravated robbery was a first degree felony while felonious assault was a second degree felony.
Appellant was paroled on April 16, 1997. On April 17, 1997, appellant signed a form entitled "Conditions of Supervision", which required him to follow all rules and regulations of treatment facilities or programs he might be ordered to attend and follow all orders of his supervising parole officer. He also signed a form notifying offenders under the supervision of the Adult Parole Authority of a change of law covering escape. That change was effective beginning October 4, 1996. The form warned that if appellant absconded from any form of Adult Parole Authority supervision which was considered "detention", he would be charged with escape and could be sentenced to prison.
On February 20, 1998, appellant was placed at a Volunteers of America ("VOA") halfway house in Toledo, Ohio following a parole violation. On May 2, 1998, appellant did not return to the VOA. Appellant was indicted for escape, a violation of R.C. 2921.34(A) and (C)(2)(a).
Appellant filed a motion to dismiss the indictment on August 25, 1998. Appellant argued that when he was paroled in April 1997, he was told that if he did not abide by the terms of supervision, he could be charged with a parole violation, but not an escape charge because he was not considered to be in detention as a parolee. Consequently, appellant maintained that because he did not know he was under detention, the state could not prove an essential element of the crime of escape. The trial court denied appellant's motion on September 22, 1998.
A jury trial was conducted on October 26, 1998. Appellee presented the testimony of a state adult parole officer and a case manager at the VOA to prosecute the case. The parole officer testified that when he met with appellant on April 17, 1997, he had appellant sign a notice, which said:
 "Attention all offenders under Adult Parole Authority supervision. Substitute House Bill No. 154 became effective October 4th, 1996. The law defines certain types of Adult Parole Authority supervision as a form of detention. If you abscond these types of supervision, you abscond from detention and you may be charged with escape, a violation of Section 2921.34 of the Ohio Revised Code. If convicted of escape, you may be sentenced to prison. If you have any questions about this new law, talk to your supervising officer."
The officer acknowledged that the form was reviewed with inmates before release from the institution and, again, with the parole officer after leaving the institution.
After a parole violation hearing on February 20, 1998, appellant was placed at the VOA. The parole officer escorted appellant to the VOA on March 4, 1998. According to the officer, he told appellant during the trip that appellant could be charged with escape because the parole officer "knew that from past history of [appellant] that he wouldn't successfully complete the VOA." On cross-examination, the parole officer testified that he considered parole to be detention for purposes of the escape statute. The officer acknowledged that prior to the change in law, a person who did not return to a halfway house could be charged only with a parole violation, whereas after the effective date, a person could be charged with both. A case manager at the VOA testified that appellant left that facility on May 2, 1998 without permission. As a result, appellant was charged with a parole violation and the crime of escape.
A counselor with the VOA and appellant testified for appellant's defense. The counselor stated appellant was concerned that his parole officer told him not to report to him for six weeks. Appellant also confided to the counselor that he was afraid of being "set up" at the VOA. Appellant testified that before he was paroled, he attended pre-release classes. According to appellant, a parole officer at the prison instructed him that while furloughees could be charged with the offense of escape under the new law, parolees and persons on probation could not be charged with escape because they were not considered to be in detention. Appellant acknowledged that he violated the terms of his parole by not returning to the VOA.
The jury found appellant guilty of escape. The trial court sentenced appellant to serve three years in prison. Appellant appeals his conviction and sets forth the following assignments of error:
 "I. THE AMENDMENT OF OHIO REVISED CODE 2967.15(C)(2) ON MARCH 17, 1998, AS APPLIED TO THE APPELLANT IN THIS CASE, IS AN IMPERMISSIBLE EX POST FACTO LAW AND A RETROACTIVE APPLICATION OF A STATUTE IN VIOLATION OF ARTICLE 1 (sic) SECTIONS 9 AND 10 OF THE UNITED STATES CONSTITUTION AND ARTICLE II SECTION 28
OF THE CONSTITUTION OF THE STATE OF OHIO.
 "II. APPELLANT HAS BEEN DENIED EQUAL PROTECTION OF THE LAW WHICH IS GUARANTEED BY THE UNITED STATES OF AMERICA AND THE STATE OF OHIO CONSTITUTIONS.
 "III. APPELLANT LACKED THE SPECIFIC INTENT NECESSARY TO BE FOUND GUILTY OT ESCAPE.
 "IV. THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant's first and second assignments of error will be addressed together because they challenge the constitutionality of the escape statutes. Appellant contends that when R.C.2967.15(C)(2) was amended to expressly include parolees who could be prosecuted for escape on March 17, 1998, it operated as an impermissible ex post facto and retroactive application of law because he was on parole before March 17, 1998. He also claims the statute denies him the equal protection of the law because the severity of punishment for escape while on parole depends on the level of the offender's original conviction.
Pursuant to State v. Awan (1986), 22 Ohio St.3d 120, syllabus, the "failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue * * * and therefore need not be heard for the first time on appeal." We decline to exercise our discretion to consider these constitutional issues for the first time on appeal. See In re M.D.
(1988), 38 Ohio St.3d 149, 151-152.
Accordingly, appellant's first and second assignments of error are found not well-taken.
In his third assignment of error, appellant contends that because he was told in prison in 1997 that parolees could not be convicted for escape, and because he was not aware of the change in law on March 17, 1998, he was not aware he was in detention on May 2, 1998. Consequently, appellant maintains he did not have the specific intent to escape from detention. The escape statute, R.C.2921.34(A)(1), provides:
 "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
Therefore, a person who is aware he is under detention and the purposeful breaking of that detention are key elements to the crime of escape. State v. Conyers (Jul. 17, 1998), Lucas App. No. L-97-1327, unreported, discretionary appeal allowed, (1998)84 Ohio St.3d 1437.
The law defining detention was changed effective October 4, 1996. Before that date, detention specifically excluded supervision of parolees. R.C. 2921.01(E) eff. 8-23-95. However, on October 4, 1996, that definition was changed to include parolees who are under the supervision of a parole officer: "Detention means * * * supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution." R.C. 2921.01(E). See State v. Conyers, supra.
However, that definition including parolees as persons under detention conflicted with R.C. 2967.15(C)(2) which provided: "A furloughee or any releasee other than a person who is released on parole or pardon is considered to be in custody while on furlough or other release, and, if he absconds from supervision, he may be prosecuted for the offense of escape." R.C. 2967.15(C)(2) eff. 6-30-95. Because of that conflict, this court has determined that parolees who absconded from supervision could not be charged with escape under the October 4, 1996 version of the relevant escape statutes. State v. Conyers, supra. Consequently, when appellant was released on parole on April 16, 1997, he could not have been charged with the offense of escape.
However, R.C. 2967.15(C)(2) was amended on March 17, 1998, thirteen days after appellant entered the halfway house. The new version eliminated the language exempting parolees from prosecution for escape. The new version allowing prosecution of parolees who absconded from supervision to be charged with escape provides:
 "A person who is under transitional control or who is under any form of authorized release under the supervision of the adult parole authority is considered to be in custody while under the transitional control or on release, and, if the person absconds from supervision, the personal may be prosecuted for the offense of escape." R.C. 2967.15(C)(2) eff. 3-17-98.
Even if appellant's testimony that he did not know he, as a parolee, was in detention were believed, the jury could have believed appellant was reckless in that regard. Appellant signed a written warning that some types of detention could form the basis of an escape charge. Appellant never clarified whether his placement at the VOA was one of those forms of detention when he was placed there on March 4, 1998, even before the law changed on March 17, 1998. The parole officer testified that even before that change, he had received training that parolees could be charged with escape and he advised appellant accordingly. Even though our decision in State v. Conyers, some three months later, rejected the parole officer's interpretation that parolees could be charged with escape between October 4, 1996 and March 16, 1998, his advice was correct beginning March 17, 1998.
Alternatively, credibility was a matter for the jury to determine.State v. DeHass (1967) 10 Ohio St.2d 230, paragraph one of the syllabus. Our review of the record reveals that a jury could have rejected appellant's testimony regarding his state of knowledge to conclude appellant knew he was in detention and specifically intended to break detention.
Accordingly appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant contends that the verdict was against the manifest weight of the evidence because he was not assigned an "in-house parole officer" in the VOA and no one told him the VOA was a detention facility.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, citing Tibbs v. Florida
(1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. We will reverse the conviction and order a new trial only if the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice. Id.
Upon a review of all the evidence in this case, we cannot find that the jury clearly lost its way. Whether appellant was in contact with his parole officer on a regular basis does not change the fact that he was released from prison confinement under the supervision of the Adult Parole Authority.
While appellant testified no one told him the VOA was a detention facility, his parole officer testified that he warned appellant he could be charged with escape for absconding from his supervision not once but twice: on April 17, 1997 and again during the trip from the jail to the VOA on March 4, 1998. Even though the parole officer's interpretation and information were incorrect for the period October 4, 1996 through March 16, 1998 in light of our decision in State v. Conyers on July 18, 1998, that interpretation was correct beginning on March 17, 1998. Most importantly, the officer's advice was a correct interpretation of the law when appellant left the VOA on May 2, 1998.
We conclude this evidence is sufficient to support a finding that appellant knew he was under detention or was reckless in that regard, and purposely broke detention by purposely failing to return to the VOA halfway house on May 2, 1998. Thus, the jury's verdict is not against the manifest weight of the evidence.
Appellant's fourth assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J._______ _______________________________ JUDGE
James R. Sherck, J._________ _______________________________ JUDGE
Richard W. Knepper, J.______ _______________________________ JUDGE CONCUR.